IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

| | |
|---|---|
| CANDY LAB, INC.,<br>a Nevada Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>MILWAUKEE COUNTY, a municipal corporation; MILWAUKEE COUNTY BOARD OF SUPERVISORS; and MILWAUKEE COUNTY DEPARTMENT OF PARKS, RECREATION, AND CULTURE<br><br>        Defendants.<br>_____/ | Case No. 17-_____<br><br>Hon.<br><br>[CIVIL RIGHTS ACTION UNDER 42 U.S.C. § 1983] |

Brian D. Wassom
Conor B. Dugan (*admission pending*)
Ashley G. Chrysler (*admission pending*)
WARNER NORCROSS & JUDD LLP
Attorneys for Plaintiff
2000 Town Center, Suite 2700
Southfield, Michigan 48075
248.784.5039
bwassom@wnj.com
conor.dugan@wnj.com
achrysler@wnj.com
_____/

# COMPLAINT

Plaintiff Candy Lab, Inc. ("Candy Lab AR") states as follows for its Complaint against Defendants Milwaukee County (the "County"), Milwaukee County Board of Supervisors (the "Board"), and Milwaukee County Department of Parks, Recreation, and Culture (the "Parks Department"):

# INTRODUCTION

1. This is a civil action seeking to protect and vindicate fundamental constitutional rights, namely the right to free speech. It is a challenge, under the First Amendment and 42 U.S.C. § 1983, to Section 47.03 of the Milwaukee County Code of General Ordinances (the "Ordinance") recently amended by Resolution 16-637, which was passed by the Board and signed by Chris Abele, Milwaukee County Executive. The Ordinance requires companies producing "virtual games" and "location-based augmented reality games" to obtain a permit before "introducing" such games "into" Milwaukee County Parks.

2. This restriction impinges on Candy Lab AR's right to free speech by regulating Candy Lab AR's right to publish its video games that make use of the augmented reality medium. The Ordinance is a prior restraint on Candy Lab AR's speech, impermissibly restricts Candy Lab AR's speech because of its content, and is unconstitutionally vague such that Candy Lab AR does not have notice as to what speech must be approved by permit and which it can express without seeking a permit.

3. Candy Lab AR seeks a declaration that Defendants violated its clearly established constitutional rights as set forth in this Complaint; a declaration that the Ordinance restricts Candy Lab AR's speech in violation of the U.S. Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; and a preliminary and permanent injunction enjoining the enforcement of the Ordinance as set forth in this Complaint. Further, Candy Lab AR seeks an award of reasonable costs of litigation, including attorney's fees and expenses, pursuant to 42 U.S.C. § 1988(b) and any other applicable law.

# JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States.

5. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Candy Lab AR's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, and by Federal Rules of Civil Procedure 57 and 65.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

8. Candy Lab AR's claim for attorney's fees and costs is authorized by 42 U.S.C. § 1988(b).

## PARTIES

9. Candy Lab AR is a registered corporation in Nevada with its principal place of business in Irvine, California. It is an award-winning software company that produces location-sensing and augmented reality software.

10. Defendant Milwaukee County is a Municipal Corporation organized under the laws of the State of Wisconsin. Its corporate counsel is located at 901 N. 9th Street, Suite 303, Milwaukee, Wisconsin 53233. It is a person within the meaning of 42 U.S.C. § 1983.

11. Defendant Milwaukee County Board of Supervisors is the County's legislative body. The Board is located at 901 N. 9th Street, Room 201, Milwaukee, Wisconsin 53233. It is a person within the meaning of 42 U.S.C. §1983.

12. Defendant Milwaukee County Department of Parks, Recreation, and Culture is the Milwaukee County Department tasked with running the County's Parks. Its offices are located at 9480 Watertown Plank Road, Wauwatosa, WI 53226. It is a person within the meaning of 42 U.S.C. § 1983.

## AUGMENTED REALITY

13. "Augmented reality" ("AR") is a term describing a medium of expression in which digital content is blended with a person's physical senses in order to expand the person's perception of physical reality. To "augment" means to "add to or make greater," and "reality" in this context is what a person perceives with their physical senses. AR, therefore, conveys information in a way that adds digital content to a person's perception of his or her physical surroundings. This effect is typically accomplished through a digital device that is, or appears to be, transparent, such as a smart phone, tablet, or smart eyewear. Taken literally, AR can refer to the digital enhancement of any physical sense, but it is most commonly applied (both in commentary and in terms of the number of available applications) to the sense of sight. As used in the context of this dispute, therefore, AR creates for its users the illusion that digital images are physically present in front of the user.

14. The medium of augmented reality is not conceptually new. A form of augmented reality has been used for decades in sports broadcasting, especially during professional football games. The digital lines seen on the television screen demarcating the line of scrimmage and first down marker constitute a form of augmented reality. On the actual football field there is no yellow line extending across the field of play, yet the broadcaster superimposes the image in a manner that makes it appear to the viewer as if it is physically present on the field.



15. Over the past few years, however, the advancement of processing speeds and internet connectivity in mobile devices has allowed the number and diversity of AR experiences to proliferate dramatically. Individuals across the country and the world now use AR applications for industrial, educational, navigational, entertainment, and other purposes. Hundreds, if not thousands, of companies and developers are actively working to create new applications for these and other uses every day.

16. Location-based applications use a mobile device's geolocation—its actual geographic and physical location—and allow the user to interact with digital content based on

the device's geolocation in real time. Some applications combine AR and location-based technology so that users interact with digital content that is tied to and appears at certain physical locations.

17. An example of AR that uses location-based technology is the game Pokémon Go, produced by Niantic, Inc. Pokémon Go employs the geolocation of a user's device and allows the player to catch, interact, and fight Pokémon characters who appear on the device's screen, superimposed as if in the player's real world location. Players can obtain digital content by interacting with game stops that are set at specific geolocations. In other words, players can obtain in-game rewards by physically going to specific geographic locations that the game recognizes through the device's GPS system. The user can experience the game's content at these specific geolocations because the content can be displayed on the device's screen.

18. Games are not the only application of AR. Examples of other uses for AR are: (a) heads-up displays in cars that superimpose information such as speed, location, directions, and lane information in foggy weather; (b) the superimposing of architectural renderings onto a real-life location so viewers can see what a building project will look like; and (c) medical applications such as a device that scans a patient's veins and then can superimpose an image of veins onto the skin so that a doctor or nurse knows where to draw blood.

19. Candy Lab AR, which was founded in 2010, develops location-based and augmented reality applications for mobile devices. Candy Lab AR's applications assign digital content to specific geolocations. Thus, anyone using that application will see the digital content in the same physical space.

20. For instance, if an image of a beach ball were assigned to the fountain in Alfred C. Clas Park outside of the Milwaukee County Courthouse—where Milwaukee County's offices

6

are located—someone using the application who was physically in the park would perceive the ball at that location on the user's mobile device. Someone on West State Street, on the other side of the County Courthouse, would not perceive the beach ball because that person would not be in the geolocation to which the image is assigned.

21. Candy Lab AR is still a startup that relies on a handful of investors.

22. Candy Lab AR cannot afford to undertake the process of researching the need to, and undertaking the effort to apply for, permits from municipal governments before publishing the very mobile applications that are the source of the company's revenue.

### The Pokémon Go Craze and the County's Response

23. Pokémon Go was released in July 2016. It became a global craze. In under a year, the game has been downloaded over 650 million times. Because many items collected in the game can only be obtained by physically going to the place where the items are located, the phenomenon brought many people outside and to new locations. It drove traffic to businesses, public monuments, parks, and landmarks.

24. The Ordinance was adopted in response to this craze. According to members of the Board, the global phenomenon brought increased traffic into the County's parks which increased trash, wear on the parks, and the need for a police presence in the parks.

25. In particular, the Board noted that Milwaukee County's Lake Park had been heavily trafficked because numerous historic landmarks within the Park were tagged as game stops.

26. Board Supervisor Sheldon Wasserman, the primary sponsor of the Ordinance, proposed the Ordinance as a framework to deal with "electronic gaming" in the County. According to Wasserman, the ordinance requires businesses introducing electronic gaming into

7

the County to provide their name, phone number, and to be held responsible if they do damage to the County's parks.

27. The Ordinance amends Section 47.03 of the Milwaukee County Code of General Ordinances to read as follows:

> (3) *Permits required for location-based augmented reality games*. Virtual and location-based augmented reality games are not permitted in Milwaukee County Parks except in those areas designated with a permit for such use by the Director of the Department of Parks, Recreation, and Culture (DPRC). Permits shall be required before any company may introduce a location-based augmented reality game into the Parks, effective January 1, 2017. The permitting application process is further described on DPRC's website for companies that create and promote such games. That process shall include an internal review by the DPRC to determine the appropriateness of the application based on site selection, protection of rare flora and fauna, personal safety, and the intensity of game activities on park lands. Game activity shall only occur during standard park hours, unless otherwise authorized by the DPRC Director, who has the authority to designate special events and activities within the Parks outside of the standard operational hours.

28. On February 2, 2017, the Board adopted the Ordinance, through Resolution 16-637 which amended Section 47.03 of the Milwaukee County Code of General Ordinances, by a vote of 13-4.

29. On February 10, 2017, County Executive Abele signed the Ordinance into law.

30. The Ordinance became effective immediately.

31. The Ordinance does not define the term "location-based augmented reality."

32. The Ordinance does not define the term "virtual gaming," though, in the "whereas" clauses of the Resolution adopting the Ordinance, virtual gaming is described broadly as "an activity during which a person can experience being in a three-dimensional environment and interact with that environment during a game."

33. The Ordinance does not establish any criteria for the Parks Department to follow in reviewing a request for a permit.

34. The Ordinance does not establish any time limit on the Parks Department's review of a request for a permit.

35. The Ordinance does not require non-virtual games to obtain a permit before being introduced into the County's Parks.

36. The Ordinance only applies to virtual and location-based augmented reality games.

## Candy Lab AR Releases "Texas Rope 'Em"

37. In March 2017, at the annual South By Southwest technology festival, Candy Lab AR announced it was introducing the first ever location-based, augmented reality poker game, called "Texas Rope 'Em."

38. Texas Rope 'Em, which is based on the popular poker variant "Texas Hold 'Em," allows users to play poker hands against a computer-controlled "dealer." Upon opening the application, players begin with two random playing cards. Because a Texas Hold 'Em hand consists of five cards, players must collect additional cards to build their hands. They accomplish this by visiting certain game stops that have been programmed into the application. When a player arrives at a game stop, the application reveals two more random cards, of which the player can select one to add to their hand. Once players build a five-card hand, they may visit up to three additional game stops to discover additional cards that may improve their hand.

39. Players may then "play" their hands against the computer-controlled dealer's hand. Points and other prizes are awarded for victories. Win or lose, players may then start the process over by building a new hand, and may share their results with friends via social media.

40. Texas Rope 'Em includes a two-dimensional map display to direct users to the various game stops at which cards may be discovered.

41. Once a player reaches one of these locations and selects one of the game stops on the map, the player sees an image and dialogue in three-dimensional augmented reality.

42. The software that allows individuals to play Texas Rope 'Em is contained entirely within the application that can be downloaded to a user's mobile device. The content displayed to users by the application is either resident within the application software, gathered by the sensors built into the device (such as GPS, rotational sensors, and accelerometers), or retrieved by the application from an internet server. The application is currently available for download through both the iOS App Store (for Apple devices) and Google Play (for Android devices).

43. Texas Rope 'Em is currently in beta form, meaning that although it is publicly available for download and use, its functionality is limited compared to the anticipated full public release. As of this date, the game is only playable in select cities, including Austin, Milwaukee, and London.

44. In its current beta form, Texas Rope 'Em includes game stops that are geolocated in Milwaukee County's Lake Park.

45. Candy Lab AR plans to release the full version of Texas Rope 'Em in the second quarter of 2017. Candy Lab AR does not intend to populate all of the game stops itself in that version of the game before release. Rather, the game will be designed to allow individuals in various cities to submit locations to be used as game stops, which Candy Lab AR will then make available in the game at the direction of those users.

## The Ordinance's Permitting Process

46. The Ordinance requires game publishers to apply for a permit that is said to be available on the Parks Department website. It is remarkably difficult, however, for developers to determine what they are required to do, even if they learn that the Ordinance exists in the first place.

47. The home page of the Parks Department website says nothing about location-based or virtual games. It does contain a menu of subpages, one of which is labeled "Permits."

48. The "Permits" page, also contains no information about location-based or virtual games. Instead, it offers links to the following choices: Athletic Field, Dog Exercise Area Permit, Geocaching Permit, Parking – O'Donnell Park, Photography/Filming, Picnic, Room, Building, & Special Facility Rental, Sales/Vendors, Special Event, and Wedding Ceremony/Reception.

49. The Special Events page contains the only relevant information to companies introducing AR games. Specifically, this page says:

> A <u>Special Event Permit Application</u> must be completed, submitted, approved, and processed by the Milwaukee County Parks Special Events Office, including a non-refundable down payment, to reserve an outdoor park space, parkway or park road for any of the following: ...
>
> - Virtual Gaming (*For game developers only*)

50. This webpage does not define "virtual gaming," however, or give any other information about which digital games require a permit.

51. The 2017 Special Event Application (the "Permit Application") available on this website is 10 pages long and requires the applicant to provide a great deal of information, including estimated attendance, location in park, event dates and times, site map, whether and

how the event will be advertised, plans for garbage collection, and provisions for on-site security and medical services.

52. The Permit Application also "reserves the right to require additional information or documentation regarding the applicant, applicant's company, sponsoring company/organization, co-sponsors, event participants, event vendors, event activities or the event itself. Moreover, Milwaukee County Parks may postpone approval of event permit(s) until receipt of additional requested information or documentation. Failure to submit requested information or documentation in a timely manner may be cause for denial of a Special Event Permit."

53. The Permit Application says nothing about the criteria the Parks Department will use to approve or disapprove of an application.

54. Much of the information requested by the Permit Application is either inapplicable, or impossible to assess accurately with respect to a mobile application. For example, Texas Rope 'Em—like other mobile applications—does not have "dates" and "times," but is always accessible to a user once downloaded to a mobile device. Candy Lab AR cannot reliably estimate the number of people who will both download the application and travel to a specific location (such as the Milwaukee County Parks) to play the game. Candy Lab AR has no way to estimate the amount of garbage removal, security, medical services, or restrooms that players of Texas Rope 'Em may require.

55. Under the Ordinance and the procedures established by the Parks Department, Candy Lab AR must submit a Permit Application and receive a Special Event Permit before being allowed to publish a version of Texas Rope 'Em that has geolocations established in the Milwaukee County Parks.

56. Indeed, because Candy Lab AR has already released a version of Texas Rope 'Em that is playable in Milwaukee Parks, it is apparently already in violation of the Ordinance.

57. The Permit Application includes an agreement to indemnify the County and hold it harmless from all liability "aris[ing] out of or are in any manner connected to this permit," (*id*. at 3, 9); an acknowledgement that "[t]he permit holder ... will be responsible for the conduct of the group and for the condition of the reserved area," (*id*. at 9); a warning that "[a]ny damage caused by vehicles will be the responsibility of the permit holder," (*id*. at 8); a provision that "Permit holder shall be responsible for any actual documented physical damage to the premises caused by its event, employees, agents, representatives, and guests. Within five (5) days of the conclusion of the event, the premises shall be restored to the satisfaction of the Regional Manager." (*Id*. at 2.)

58. These provisions impose vicarious liability for the actions of every single person who downloads and plays a game in the parks.

59. For Candy Lab AR, the cost of bearing that responsibility would be financially prohibitive.

60. The Permit Application also requires that "ALL special events ... are **required** to submit a "Certificate of Insurance" in the amount of **$1,000,000** of general liability coverage naming **Milwaukee County Parks as an additional insured** for the date(s) of the event including set-up and teardown date(s). Milwaukee County Parks must be listed as the Certificate Holder .... The special event permit will not be issued if a Certificate of Insurance has not been received, accepted, and placed on-file." (*Id*. at 2 (emphasis in original).)

61. For Candy Lab AR, the cost of obtaining this insurance for unknown numbers of players, in every park, during all park hours, would be prohibitive.

62. The Permit Application also alerts the applicant to numerous other potential fees. (*See id*. at 2-3 (listing various fees including "hotline fee ($500.00), garbage collection ($50.00 per employee per hour), recycling containers rental ($5.00 per day), picnic tables rental ($15.00 per day), garbage baskets rental ($7.00 per day), barricades rental ($8.00 per day) and an excessive clean-up fee ($150.00 minimum)" and participant fees.

63. For Candy Lab AR, these multiple, duplicative, and uncapped fees would be prohibitively expensive.

64. The Permit Application also states that the Parks Department "in its sole discretion may require prominent placement of its logo on any and all promotional materials, whether print or digital, related to your special event." (*Id*. at 4.) If the Parks Department requires a logo placement, "acknowledgement signage must be prominently displayed . . . in all print and TV promotions and advertising." (*Id*.) A copy of any such advertising must be submitted to the Parks Department at 30 days before the event. (*Id*.)

65. If the Parks Department requires Candy Lab AR to display its logo, Candy Lab AR will need to include the Parks Department Logo in all of its advertising for Texas Rope 'Em, even though the number of game stops in Milwaukee County Parks are but a small portion of the stops that will be available across the globe in the final version of the game. Further, Candy Lab AR will need to get Parks Department permission before running such advertising.

## The Ordinance Applies to Texas Rope 'Em

66. The Ordinance states that "Permits shall be required before any company may introduce a location-based augmented reality game into the Parks...."

67. Taken literally, this language is incoherent and nonsensical. No company "introduces" a piece of software "into" any physical location. The fact that a particular software

application is "location-based" merely means that it will perform certain functions, or display certain content, based on where the device running the software is located at any given time. The developer's role in distributing that software, however, ends with making it available for download in a software app store. Physical entry into a location only occurs when an individual carries his or her mobile device with them into the location.

68. Based on Defendants' statements that the Ordinance is intended to regulate mobile games such as Pokémon Go, and that the Ordinance is intended to apply to the companies that publish those games rather than merely to the people who play them, however, Candy Lab AR assumes that the Ordinance is meant to apply to game publishers such as itself, and to the act of publishing a mobile game with functionality that is triggered by a user's physical presence in a Milwaukee County Park.

69. Indeed, the Parks Department has confirmed Candy Lab AR's interpretation of the Ordinance, and specifically that the Ordinance applies to Texas Rope 'Em.

70. On or about March 24, 2017, Candy Lab AR sent the following message to the Parks Department:

> I'm writing to ask whether my company requires a Special Events permit before releasing its new location-based augmented reality game to the public. The game is called "Texas Rope Em"; information is available at http://texasropeem.com/ . Just like Pokémon Go, it requires players to be in the vicinity of certain physical locations in order to interact with virtual items—in this case, virtual poker cards. The beta version of the game is currently playable in Milwaukee's Lake Park. Once it's formally launched in the near future, players will be able to create their own locations, and I fully expect them to appear in Milwaukee parks. Because poker is so popular, we hope this game will be even more of a hit than Pokémon Go was. Please let me know as soon as possible.

71. On March 24, 2017, Ryan Broderick, Special Events Coordinator for the Milwaukee County Department of Parks, Recreation & Culture responded:

> Thank you for contacting the Milwaukee County Parks.
>
> To apply for a virtual gaming permit you must complete the attached Special Event Application and submit with a map of all of the areas that you would like to add virtual gaming stops.

72. The attachment to Mr. Broderick's email was the same Permit Application available on the County's website.

73. On March 27, 2017, Candy Lab AR responded to Mr. Broderick with the following:

> Thank you for responding to my inquiry and clarifying that Candy Lab AR requires a Special Events permit before releasing Texas Rope 'Em to the public. We will review the form and get back to you.

74. On March 28, 2017, Mr. Broderick further responded by saying: "Great, thank you so much! Have a wonderful day, Ryan."

# COUNT I

## VIOLATION OF FIRST AMENDMENT SPEECH RIGHTS AND 18 U.S.C. §1983

75. Candy Lab AR realleges and incorporates by reference the allegations of the preceding paragraphs.

76. Under the First Amendment of the U.S. Constitution, Candy Lab AR has a protected right to free speech.

77. Candy Lab AR's Texas Rope 'Em is a form of speech protected by the First Amendment to the U.S. Constitution.

78. The Ordinance restricts speech by prohibiting the introduction of augmented reality games into the County's parks without first obtaining a permit.

16

Case 2:17-cv-00569-JPS   Filed 04/21/17   Page 16 of 19   Document 1

79. The Ordinance acts as a prior restraint on Candy Lab AR's speech because it requires Candy Lab AR to obtain governmental approval over the form and content of the expression of its speech—i.e., a permit—before that message can be expressed in Milwaukee County Parks. The County, through its Parks Department, is empowered to determine whether to grant the permit. Approval is dependent upon the County's action and is not a routine matter. There is no time limit for approval and there are no criteria for approval. The Ordinance imposes onerous fees.

80. The Ordinance restricts Candy Lab AR's speech based on its content, specifically requiring any company introducing a game with location-based augmented reality subject matter to obtain a permit before introducing that game into the County's parks. Other games—of any kind—do not face the same prohibitions in the County's parks.

81. The Ordinance fails to give adequate notice to a person of ordinary intelligence concerning the speech it proscribes and thus is unconstitutionally vague.

82. The Ordinance violates Candy Lab AR's First Amendment rights by interfering with its customers' ability to use its applications, and by dissuading them from doing so,

83. The Ordinance violates Candy Lab AR's First Amendment rights by forcing Candy Lab AR to publish certain content in its advertising, and by requiring pre-approval of advertising content.

84. Through the Ordinance, Defendants are acting under color of law to deprive Candy Lab AR of its constitutional rights in violation of 42 U.S.C. § 1983.

85. As a direct and proximate result of Defendants' violations of Candy Lab AR's constitutional rights, Candy Lab AR has suffered irreparable harm, including the loss of its constitutional rights, entitling it to relief.

## COUNT II

## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201.

86. Candy Lab AR realleges and incorporates by reference the allegations of the preceding paragraphs.

87. Candy Lab AR contends that the Ordinance violates Candy Lab AR's right to free speech protected under the First Amendment of the United States Constitution.

88. Defendants believe the Ordinance is valid and intend to enforce it against Candy Lab AR with respect to the introduction of Texas Rope 'Em into the Milwaukee County Parks.

89. There is a real and actual controversy between Candy Lab AR and Defendants regarding the constitutionality of the Ordinance as applied to Candy Lab AR and on its face.

90. Defendants' conduct has forced Candy Lab AR to choose between exercising its First Amendment Rights to publish Texas Rope 'Em with stops located in the County's Parks and risking liability, or violating its First Amendment Rights and applying for a permit from the Parks Department. Thus, the controversy between Candy Lab AR and Defendants is real and substantial and demands specific relief through a decree of conclusive character.

91. Candy Lab AR is entitled to a declaratory judgment that the Ordinance violates the First Amendment, as applied and facially.

## PRAYER FOR RELIEF

92. WHEREFORE, Candy Lab AR respectfully requests that this Court:

   A. Pursuant to 28 U.S.C. § 2201, take jurisdiction over the parties and determine the rights, obligations, and relations between the parties;

B. Declare the Ordinance violates Candy Lab AR's First Amendment right to free speech as a prior restraint on speech, and therefore is unconstitutional and unenforceable, facially and as applied;

C. Declare the Ordinance violates Candy Lab AR's First Amendment right to free speech as an unlawful content-based regulation of speech, and is therefore unconstitutional and unenforceable, facially and as applied;

D. Declare the Ordinance void for vagueness, facially and as applied, because it does not provide adequate notice to a person of ordinary intelligence concerning the speech it proscribes and therefore unconstitutionally chills speech;

E. Prohibit, through preliminary and permanent injunction, the Defendants, their agents, and successors, from enforcing the Ordinance against Candy Lab AR and any other virtual gaming company;

F. Award damages in an amount to be determined; and

G. Any further relief the Court deems just and warranted.

Respectfully submitted,

WARNER NORCROSS & JUDD LLP

Dated: April 21, 2017

/s/ Brian D. Wassom
Brian D. Wassom
Conor B. Dugan (*admission pending*)
Ashley G. Chrysler (*admission pending*)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, Michigan 48075
248.784.5039
bwassom@wnj.com
conor.dugan@wnj.com
achrysler@wnj.com
Attorneys for Plaintiff